**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 23-7498

TIMOTHY P. RODGERS, PETITIONER,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before TOTH and LAURER, *Judges*, and BARTLEY,[1] *Senior Judge.*

**O R D E R**

Pending before the Court are a December 7, 2023, petition from veteran Timothy P. Rodgers regarding the interplay between and propriety of parallel VA administrative and criminal fraud proceedings in the U.S. District Court for the Southern District of Illinois (District Court); a concurrent December 7, 2023, motion from Mr. Rodgers requesting that in accordance with Rule 8 of the Court's Rules of Practice and Procedure (Rules) the Court suspend Secretarial action; and the Secretary's June 27, 2025, motion to strike from the record grand jury testimony that is subject to a protective order. Because this petition represents this Court's first interpretation of 38 C.F.R. § 14.561, it was referred to a panel of the Court.

For the reasons that follow, the Court will grant the Secretary's June 2025 motion and strike the challenged material from the record. The Court will dismiss as moot the portions of the petition seeking to access evidence from VA's Office of Inspector General (OIG) investigation and to correct the contents of Mr. Rodgers's claims file. The Court will deny the remainder of the petition. And because the Court is dismissing or denying the petition, the Court will likewise deny the accompanying December 2023 Rule 8 motion.

**I. PETITION**

On December 7, 2023, Mr. Rodgers, then self-represented, filed a petition for extraordinary relief in the nature of a writ of mandamus. In his petition, Mr. Rodgers asserted, among other things, that a writ was necessary to compel VA to reinstate benefits that he alleged were wrongfully reduced or severed based on allegations of fraud. Initial Petition at 40. He concurrently filed a Rule 8 motion requesting that the Court direct VA to stop criminal fraud proceedings against him. Rule 8 Motion at 1-2. On December 8, 2023, Mr. Rodgers supplemented his petition with evidence in support of his initial petition. On December 11, 2023, he filed notice in accordance with *Solze v. Shinseki*, 26 Vet.App. 229 (2013) (*Solze* notice), asserting, among other things, that documents regarding threats that another veteran, with the same name as petitioner, made to VA officials had

---

[1] Judge Bartley is a Senior Judge acting in recall status. *In re Recall of Retired Judge*, U.S. VET. APP. MISC. ORDER 05-26 (Jun. 25, 2026).

been erroneously included in petitioner's claims file and used against him in criminal proceedings, resulting in his detention.  December 2023 *Solze* notice at 3-4.

On December 18, 2023, the Court ordered the Secretary to respond to Mr. Rodgers's assertions.  While the Secretary's response was pending, Mr. Rodgers secured representation in this matter. In a March 4, 2024, response, the Secretary explained that, based on evidence collected during a multi-year OIG fraud investigation, a VA regional office (RO) proposed in September 2022 to reduce Mr. Rodgers's seizure evaluation from 100% to 40%, effective August 22, 2018, and discontinue special monthly compensation (SMC) aid and attendance benefits effective October 6, 2014.  Secretary's March 2024 Response at 2.  In a September 2023 rating decision, the RO effectuated the proposed reduction.  *Id*. at 3.  And, in October 2023, VA notified Mr. Rodgers of a substantial overpayment created by the retroactive reduction and advised him how to dispute, seek waiver of, or otherwise appeal the debt.  *Id*.

As for the petition, the Secretary urged denial, asserting that Mr. Rodgers had adequate alternate means to obtain the desired relief: appealing the September 2023 rating reduction; appealing the creation of the overpayment; requesting waiver of the debt (and appealing any waiver denial).  *Id*. at 4-6.  The Secretary also urged the Court to deny the Rule 8 motion for flouting that Rule.  *Id*. at 6-7.  And to the extent that Mr. Rodgers's petition and Rule 8 motion could be read as objecting to the OIG investigation, the Secretary contended that the relief sought is outside the Court's jurisdiction.  *Id*. at 5-6.

On March 12, 2024, Mr. Rodgers filed a motion, through counsel, seeking leave to reply to the Secretary's March 2024 response.  The motion was granted, and in his reply of March 22, 2024, Mr. Rodgers conceded the accuracy of the Secretary's factual and procedural history here. Petitioner's March 2024 Reply at 1-2.  But he contended that a writ was necessary to compel the Secretary to provide access to the OIG evidence used to sever his benefits and to stay VA's cooperation in criminal prosecution of the alleged fraud until the administrative appeal process ran its course.  *Id.*  Specifically, he asserted that the Secretary was withholding portions of the OIG report, preventing him from fully pursuing his appeal of the rating reduction and debt creation.  *Id*. at 1-2, 6-7.  He also asserted that VA's referral of his alleged benefits fraud for criminal prosecution before VA had completed the administrative appeals process impeded petitioner's ability to participate in that appeals process because doing so could jeopardize his Fifth Amendment rights with respect to the criminal proceedings.  *Id*. at 4.  He contended that this Court, not the District Court, was best suited to resolve factual questions about his appropriate level of VA benefits and that, in referring his case for criminal prosecution, the Secretary was attempting to transfer authority over his VA benefits decision to a less qualified tribunal.  *Id*. at 4-5.  And he noted that the criminal case against him was further complicated by the Secretary's insistence that petitioner authored a threat letter written by another veteran with petitioner's name, who lived in a different state and had a different Social Security number.  *Id*. at 20.

On May 8, 2024, the Court ordered the Secretary to respond to the contentions raised in Mr. Rodgers's March 2024 reply.  The Secretary responded on July 17, 2024, noting that Mr. Rodgers had acknowledged that he had the right to appeal the administrative decisions, Secretary's July 2024 Response at 3, and that Mr. Rodgers had not adequately established that the separate criminal proceedings infringed on that right, *id*. at 4-5.  The Secretary further asserted that this

Court lacks jurisdiction to interfere with District Court criminal proceedings, to include VA's cooperation in those proceedings. *Id*. at 6. He contended that, if petitioner wanted action taken with respect to the District Court proceedings, he should seek relief from that tribunal. *Id*. at 7. The Secretary also disputed Mr. Rodgers's contention that evidence had been withheld from him. *Id*. at 8. The Secretary did not address the contention that another veteran's records had been associated with Mr. Rodgers's claims file.

On July 30, 2024, Mr. Rodgers replied to the Secretary's July 2024 response. He clarified that he was not asking this Court to intervene in another tribunal's proceedings but, instead, asking the Court to exercise jurisdiction over VA personnel. Petitioner's July 2024 Reply at 1-2. He reiterated his contention that VA improperly provided criminal prosecutors with a threat letter written by a different veteran and that he had been subject to house arrest based on that evidence. *Id*. at 4-5. He further argued that the OIG report submitted to criminal prosecutors contained false information regarding benefits he had been awarded and the regulations governing those benefits, and that VA failed to notify the prosecutors that relevant litigation was pending before this Court challenging the regulation implementing the level of SMC granted under 38 U.S.C. § 1114(t), which is relevant in his case. *Id*. at 6-8. As for the effect of the criminal proceedings on his administrative appeals, he explained that if, as part of the appeals process, VA were to determine that another VA examination was required, he would have to choose between attending that examination to further his administrative appeal and refusing the examination to preserve his Fifth Amendment rights in the parallel criminal proceedings. *Id*. at 8-10. He further asserted that § 14.561 requires VA's Office of General Counsel (OGC) to ensure that necessary administrative or adjudicatory actions are completed before cases are referred to the Department of Justice (DOJ) for possible criminal proceedings, and that there is no record here that OIG consulted with OGC before referring this matter to the DOJ. *Id*. at 3.

On August 12, 2024, the Secretary filed an opposed motion to strike Mr. Rodgers's July 2024 reply for not being contemplated by the Court's rules, for improperly raising new arguments for the first time, and for failing to seek the Court's leave to file the reply. On August 22, 2024, Mr. Rodgers filed his opposition, contending that his reply was necessary and that it was in the interest of justice to allow his reply, to clarify the specific points raised in the Secretary's July 2024 response.

On January 15, 2025, the Court denied the Secretary's motion to strike, concluding that, given the gravity of the issues raised, judicial fairness was best served by accepting Mr. Rodgers's July 30, 2024, reply as filed on that date. But on review of both parties' submissions as of that date, and to ensure no prejudice to the Secretary by accepting petitioner's July 2024 reply, the Court ordered both parties to file supplemental responses. Among other things, Mr. Rodgers was ordered to: clarify whether the issues raised in his initial, self-represented petition but not reraised once represented by counsel were withdrawn; identify what evidence he had been unable to access; and advise the Court whether he had notified the District Court that he had not written the threat letter. The Secretary was ordered to: review Mr. Rodgers's claims file for any misfiled records, remove those records, and advise the Court as to any corrective action taken with respect to misfiled records; and provide Mr. Rodgers access to any identified evidence or explain why access could not be granted. Both parties were ordered to address: the relevance of § 14.561 to these proceedings; the potential effect of criminal proceedings on the Court's jurisdiction to consider any

3

prospective administrative appeals; this Court's authority over VA personnel involved in the criminal proceedings; and the implication for Mr. Rodgers's Fifth Amendment right to silence of parallel criminal and administrative proceedings and whether any such implication confers on this Court the authority to intervene.

Mr. Rodgers filed his supplemental response on February 14, 2025.  First, Mr. Rodgers confirmed that he withdrew any issues identified in his self-represented filings that were not explicitly addressed in subsequent filings through counsel.  Petitioner's February 2025 Supplemental Response at 1.  As for the evidence to which he sought access, he confirmed that he was seeking access to the OIG investigative file received by the RO on August 29, 2022.  *Id*. at 2-3.  As for the threat letter, he explained that, as of the date of his filing, the letter remained in his claims file and an evidentiary meeting with the criminal prosecutor was scheduled to occur in the next few days.  *Id*. at 3-5.

As for the relevance of § 14.561, Mr. Rodgers argued that it requires that, barring certain exceptions not at issue in his case, VA must ensure that all necessary administrative and adjudicative actions—to include exhausting the administrative appeals process—have taken place before referring matters for criminal prosecution.  *Id*. at 5-8.  He argues that this is necessary to avoid the chilling effect a criminal prosecution has on a veteran's ability to meaningfully participate in an administrative appeal that may come before the Court.  *Id*. at 8, 12.  He explained that a criminal defense lawyer would advise against participating in an administrative appeals process while criminal proceedings were pending because that participation could be used against him or even spur the filing of additional charges.  *Id*. at 11-12.  Thus, to preserve his Fifth Amendment rights to silence and due process, he would have to forgo his administrative appeal, depriving this Court of its prospective jurisdiction.  *Id*.  He contended that he already elected to forgo a hearing in his administrative appeal because of the pending criminal proceedings.  *Id*. at 9. He also argued that this Court could be deprived of its exclusive jurisdiction over veterans benefits questions—and bound by the principle of res judicata—if he is found guilty in the criminal proceedings.  *Id*. at 10-11, 16.  He acknowledged that this Court lacks jurisdiction over criminal prosecutions pending in a District Court but asserted that this Court's exclusive jurisdiction over benefits under laws administered by VA grants the Court the authority to order VA personnel to suspend cooperation with criminal proceedings (absent a contravening order from the District Court) or, at a minimum, to have the Secretary correct material misrepresentations made to the District Court.  *Id*. at 17.

On May 28, 2025, and before the Secretary responded to the Court's January 2025 order, Mr. Rodgers filed a motion to file, under seal, a *Solze* notice that included a copy of the OIG investigator's grand jury testimony and submitted the testimony in question.  He filed an amended motion on May 30, 2025.  On June 2, 2025, the Secretary responded to the amended May 30, 2025, motion, explaining that while he did not oppose the motion to the extent it sought to file the grand jury testimony under seal, it was subject to a District Court protective order barring its distribution in any manner; he also suggested that it should be stricken from the docket.  The Secretary added that contempt proceedings had been initiated in the District Court based on petitioner's May 2025 filing.

4

Also on June 2, 2025, the Secretary filed his supplemental response to the Court's January 2025 order. The Secretary asserted that Mr. Rodgers had been provided access to the identified OIG investigative materials and therefore that issue was moot. Secretary's June 2025 Supplemental Response at 1. The Secretary further attested that VA had reviewed petitioner's claims file; determined that two documents—including correspondence from a similarly named veteran—had been misfiled in petitioner's claims file; removed those documents from petitioner's claims file; and notified OIG that the documents had been misfiled in petitioner's claims file. *Id*. at 4. The Secretary advised that the prosecutor assigned to the criminal proceedings was aware of the misfiling. *Id*. at 4-5.

As for Mr. Rodgers's reliance on § 14.561, the Secretary argued that it is misplaced because, among other reasons, the plain regulatory language specifically applies to criminal referrals from VA's *OGC* (and the ROs), but does not apply to referrals from *OIG*, which is independent of OGC. Secretary's June 2025 Supplemental Response at 6-8. And in this case, the Secretary explained, the OIG investigation and subsequent referral to the U.S. Attorney originated from an external, anonymous tip directly to OIG, not from an OGC referral. *Id*. at 7. The Secretary further argued that Mr. Rodgers's concern that the criminal proceedings could deprive this Court of jurisdiction is similarly misplaced because the criminal and administrative proceedings are substantively different, with differing evidentiary records, governing legal frameworks and burdens, proceedings and procedural rights, and remedies or penalties. *Id*. at 11-12.

The Secretary acknowledged that a factual finding of fraud in the District Court could be associated with the administrative appeal record, and reviewed by the Board and this Court, thereby potentially affecting a merits consideration, but that the outcome of criminal proceedings would not necessarily be dispositive in administrative appeal proceedings and therefore would not deprive the Court of its jurisdiction to consider this matter. *Id*. at 12-14. The Secretary further contended that Mr. Rodgers's argument in this respect relies on a speculative chain of events (a guilty criminal verdict and an adverse Board decision), and that the Court's prospective jurisdiction cannot depend on a speculative chain of events. *Id*. at 14 (citing *Love v. McDonough*, 35 Vet.App. 336, 342 (2022)).

The Secretary also acknowledged that parallel criminal and administrative proceedings could implicate Mr. Rodgers's Fifth Amendment rights but asserts that Mr. Rodgers's concerns would be better addressed by him seeking a stay of his pending administrative proceedings, a matter clearly within the Court's jurisdiction. *Id*. at 14-17. And as for Mr. Rodgers's assertion that VA has misrepresented the VA benefits scheme to the District Court, the Secretary notes that the concern rests on an unproven assumption that the District Court and other involved parties are unable to understand the benefits scheme in the context of criminal fraud proceedings. *Id*. at 18.

On June 13, 2025, the Court directed the Secretary to clarify whether he wished to strike the grand jury testimony from the record and directed Mr. Rodgers to clarify whether he had received the requested relief regarding the contents of his claims file and access to OIG materials and to reply, if desired, to the Secretary's § 14.561 argument.

On June 27, 2025, Mr. Rodgers filed a response contending that the misfiled threat letter continues to influence the criminal proceedings against him and that the version of the OIG report

5

he accessed did not appear to contain one of the interviews referenced in the September 2023 RO decision.  Petitioner's June 27, 2025, Response at 6-7.  He also asserted that OIG is statutorily obligated to coordinate investigative activities within the agency, *id*. at 1-2 (citing 5 U.S.C. § 404), arguing that the statutory provision should be read in conjunction with § 14.561 as requiring confirmation from OGC that administrative proceedings have concluded before OIG refers matters for criminal proceedings, *id*. at 2.  He further argued that because OIG personnel are part of VA and act as agency representatives, they are bound to observe § 14.561.  *Id*. at 2.  And he argued that even though the Board may still theoretically make a de novo merits decision on his administrative appeal, its analysis would be colored by any intervening verdict from the District Court.  *Id*. at 6.

Also on June 27, 2025, the Secretary moved to strike from the record the grand jury testimony, reiterating that it was subject to a protective order and that contempt proceedings had been proposed; he also argued that Mr. Rodgers had not established the relevance of that material to resolving the issues raised in this petition.

On July 11, 2025, Mr. Rodgers responded to the motion to strike the grand jury testimony, asserting, among other things, that it is relevant to these proceedings because it demonstrates that OIG made material, and prejudicial, misrepresentations to the District Court and the DOJ, underscoring the need for this Court to act as he has requested.  On August 5, 2025, he notified the Court, pursuant to *Solze*, that the District Court had denied the government's motion for an order to show cause and to initiate contempt proceedings with respect to the filing of protected grand jury testimony in this docket.

On August 13, 2025, the Court ordered the Secretary to provide Mr. Rodgers with a copy of the interview that he alleged was missing from the OIG materials or to otherwise advise the Court.  On August 20, 2025, the Secretary advised the Court that he confirmed with counsel for Mr. Rodgers that she was able to access the interview in question.

In the interest of justice, the Court will construe Mr. Rodgers's December 2023 petition as including (and limited to) the arguments raised through counsel in subsequent filings.  *See* U.S. VET. APP. R. 2 ("On its own initiative or on a party's motion, the Court may suspend any provision of these Rules and otherwise order proceedings as it sees fit.").

## II. APPLICABLE LAW AND JURISDICTION

This Court has authority to issue extraordinary writs in aid of its jurisdiction pursuant to the All Writs Act (AWA), 28 U.S.C. § 1651(a).  *See Cox v. West*, 149 F.3d 1360, 1363-64 (Fed. Cir. 1998).  This includes issuing writs of mandamus to "compel action of the Secretary unlawfully withheld or unreasonably delayed."  38 U.S.C. § 7261(a)(2); *see Martin v. O'Rourke*, 891 F.3d 1338, 1342-43 (Fed. Cir. 2018).  However, "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."  *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 402 (1976).  Three conditions must be met before the Court can issue a writ: (1) The petitioner must demonstrate the lack of adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used as a substitute for the appeals process; (2) the petitioner must demonstrate a clear and indisputable right to the writ; and (3) the Court must be convinced, given the

6

circumstances, that issuance of the writ is warranted. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004). This Court also adheres to the case or controversy jurisdictional requirements imposed by Article III of the U.S. Constitution. *Cardona v. Shinseki*, 26 Vet.App. 472, 474 (2014) (per curiam order); *Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990); *see also Thomas v. Brown*, 9 Vet.App. 269, 270-71 (1996) (per curiam order) (holding that, when the relief requested in a petition has been obtained, the appropriate course of action is for the Court to dismiss the petition as moot).

### III. ANALYSIS

In his construed petition, Mr. Rodgers raised three issues for which he seeks the Court's assistance. He seeks to: (1) obtain access to all records used to sever his benefits, including the OIG file received by the RO on August 29, 2022, and a specific interview contained therein; (2) remove from his claims file a threat letter—written by another veteran—that was used against him in criminal proceedings and notify the criminal tribunal that the letter was misfiled; and (3) direct VA personnel to stop cooperating with the criminal proceedings and take corrective action because (a) VA failed to comply with the 38 C.F.R. § 14.561 requirement that OGC ensure that the necessary administrative or adjudicatory actions are completed before cases are referred for possible criminal proceedings, (b) this Court is the best venue for resolving factual questions about his appropriate level of benefits and VA has conveyed to the criminal tribunal inaccurate and incomplete information about the relevant benefits regulations, (c) preserving his Fifth Amendment right to silence necessarily impedes his ability to proceed with his administrative appeal, and (d) a criminal finding of fraud could divest this Court of jurisdiction as to any prospective administrative appeal.

#### A. Access to Evidence and Correcting Claims File Contents

As regards the first issue—access to the complete OIG file received by the RO—in June 2025 the Court ordered Mr. Rodgers to clarify what evidence remained unavailable to him, and the only evidence Mr. Rodgers identified in his response was a specific interview transcript. The Secretary reported in his August 2025 response that counsel for Mr. Rodgers confirmed that she was able to access that evidence. Mr. Rodgers did not dispute the Secretary's report. Accordingly, the Court concludes that Mr. Rodgers received the relief requested with respect to the first issue and will dismiss that portion of the petition as moot. *See Cardona*, 26 Vet.App. at 474; *Thomas*, 9 Vet.App. at 270-71.

As regards the part of the second issue related to Mr. Rodgers's administrative appeal—removing misfiled material from Mr. Rodgers's VA claims file—the Secretary confirmed in June 2025 that the contents of Mr. Rodgers's claims file had been corrected and that the criminal prosecutor was aware of the misfiling. Because the Court concludes that Mr. Rodgers has received the relief requested with respect to this portion of the second issue, the Court will dismiss that part of the petition as moot. *See Cardona*, 26 Vet.App. at 474; *Thomas*, 9 Vet.App. at 270-71. To the extent that the misfiling issue involves a request that the Court act with respect to the criminal proceedings, it is addressed below.

7

B. Interaction with Criminal Proceedings

*1. Whether the Court has Jurisdiction to Consider the Parts of the Petition Concerning Criminal Proceedings*

The remainder of Mr. Rodgers's petition involves his request that the Court intercede under § 14.561 as to VA's actions regarding criminal fraud proceedings in the District Court.  Before proceeding, we must address whether we have jurisdiction to consider his request.

"[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see Monk v. Shulkin*, 855 F.3d 1312, 1318 (Fed. Cir. 2017).  This authority extends the Court's power to issue a writ in aid of its potential or prospective jurisdiction. *Erspamer v. Derwinski*, 1 Vet.App. 3, 8 (1990).  In answering whether we have such jurisdiction we look to 38 U.S.C. § 511, the statute that authorizes the Secretary to "decide all questions of law and fact necessary to a decision . . . under a law that affects the provision of [VA] benefits." *See Bates v. Nicholson*, 398 F.3d 1355, 1359 (Fed. Cir. 2005) (discussing the jurisdictional chain between section 511(a), the Board's jurisdiction under 38 U.S.C. § 7104(a), and this Court's jurisdiction under 38 U.S.C. § 7252(a)).  In other words, we must decide whether § 14.561 is a law that affects the provision of benefits.

Section 14.561, titled "Administrative action prior to submission," requires that, except in situations not at issue here,

> [b]efore a submission is made to the U.S. Attorney in cases involving personnel or claims, the General Counsel, if the file is in Central Office, or the Regional Counsel at the regional office, hospital or center, if the file is in the regional office or other field facility, will first ascertain that necessary administrative or adjudicatory . . . action has been taken.

38 C.F.R. § 14.561 (2025).  Mr. Rodgers argues that VA violated this regulation in his case because his administrative proceedings apparently were not taken or completed before federal criminal proceedings were begun.  He asks us to provide relief by enforcing the procedure laid out in the regulation.  The Secretary contends that, because the eventual outcome of the criminal proceedings is unknown, Mr. Rodgers's argument is premised on a hypothetical scenario and that this Court lacks jurisdiction to consider his request. *See* Secretary's June 2025 Supplemental Response at 14 (citing *Love*, 35 Vet.App. at 342).

Petitioner raises a question concerning VA's alleged non-compliance with § 14.561 and the effect of noncompliance on his ability to participate in VA administrative proceedings.  We conclude that § 14.561 meets the requirement that it be a law that affects the provision of VA benefits.  The regulation, were we to determine that it was violated, would undoubtedly affect the provision of VA benefits because if Mr. Rodgers were found guilty of VA benefits fraud beyond a reasonable doubt in a criminal tribunal before completion of administrative proceedings, that judgment would effectively be outcome determinative as to administrative proceedings challenging fraud and debt creation.  Therefore, as to this part of Mr. Rodgers's petition, a writ

8

would aid our prospective jurisdiction, and we have jurisdiction under the AWA to address his § 14.561 argument and assess the availability of appropriate relief.[2]

### 2. VA Cooperation with Criminal Proceedings

### i. Whether VA violated 38 C.F.R. § 14.561

As noted, § 14.561 provides in relevant part that, before VA OGC submits for federal prosecution a case involving a claim, it "will first ascertain that necessary administrative or adjudicatory . . . action has been taken." The Secretary argues, among other things, that § 14.561 does not apply in Mr. Rodgers's case because his alleged fraud was reported by an outside source to VA OIG, which initiated proceedings independent of OGC and the RO. The Court agrees.

It is well established that regulatory interpretation is a question of law, the answer to which "begins with the language of the regulation, the plain meaning of which is derived from its text and its structure." *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015). Furthermore, when "the plain meaning of a regulation is clear from the language, that meaning controls and that is the end of the matter." *Id*. at 422-23. Here, by its plain terms, the regulation governs the behavior of OGC or an RO; the regulation makes no reference to VA's OIG, which is a separate entity within VA. The regulation explains when OGC or the Regional Counsel may submit a case to the U.S. Attorney for possible prosecution but does not suggest that it prohibits independent action by OIG. Thus, the text of the regulation does not accord with Mr. Rodgers's proposed interpretation.

Turning to the regulatory structure, the Court observes that § 14.561 is one of three regulations, along with 38 C.F.R. §§ 14.560 and 14.562, falling under the heading of "Prosecution." Section 14.560 informs that the DOJ or the U.S. Attorney have the sole obligation and authority to interpret, enforce, and proceed with action under criminal statutes; that Regional Counsel must cooperate with such action if requested; and that the Regional Counsel must notify OGC whenever Regional Counsel believes that criminal or civil action should be initiated. Section 14.562 advises that, when a submission to the U.S. Attorney has been made, "no demand for payment or adjustment will be made without the advice of the U.S. Attorney." Thus, § 14.561, in context, is part of a series of regulations outlining the entity (DOJ or the U.S. Attorney) responsible for criminal prosecutions in veterans benefits-related matters and requiring the Regional Counsel's cooperation in such efforts; specifying what actions must be taken before OGC or the Regional Counsel refers a matter for possible prosecution; and preventing VA from demanding payment or adjustment while the criminal matter is pending unless under the advice of the U.S. Attorney.

In other words, considering § 14.561 in its regulatory context confirms that it governs the role of *OGC* (and Regional Counsel) should that entity refer a matter to the U.S. Attorney for possible prosecution. But it says nothing about—that is, puts no constraints on—the role of *OIG*. Moreover, § 14.560 is clear that Regional Counsel "will cooperate" with DOJ or the U.S. Attorney once action is initiated. Accordingly, the plain language and regulatory context of § 14.561 does

---

[2] That petitioner discusses the criminal proceeding in some detail doesn't disturb our jurisdiction to address the § 14.561 issue. Furthermore, our jurisdictional analysis is limited to whether a writ would be in aid of our prospective jurisdiction for the purpose of considering this part of Mr. Rodgers's petition. We need not, and do not, reach any conclusion as to the mechanics of a writ were extraordinary relief to be granted.

not support Mr. Rodgers's argument that it governs or may be used by this Court to constrain the efforts of OIG or to prohibit VA personnel from cooperating with prosecution initiated by DOJ or the U.S. Attorney upon referral from OIG.  And because the regulatory language is clear, the plain meaning controls, and the Court's inquiry ends.  *See Petitti*, 27 Vet.App. at 422-23.

The Court has considered Mr. Rodgers's argument that, because OIG is part of VA, it is bound by the restrictions of § 14.561.  But the plain language of the regulation refers to action by OGC and Regional Counsel specifically, not to VA actors en masse; accordingly, the plain language reading required does not support Mr. Rodgers's argument.  The Court has also considered Mr. Rodgers's argument that OIG's statutory obligation under 5 U.S.C. § 404 to coordinate investigative activities within the agency should be read as requiring OIG to comply with § 14.561 such that OIG may not act unless and until OGC confirms that the terms of § 14.561 are satisfied.  But Mr. Rodgers has not explained why OIG's obligation to coordinate actions with the agency would require the application of a regulation plainly governing investigations *referred from OGC* (or Regional Counsel) in situations where OIG directly initiates investigations.  And absent any indication in the text of the governing statute or regulation of the requirement Mr. Rodgers suggests, the Court declines to impose any.

Ultimately, the plain text and regulatory structure of § 14.561 are clear that it involves referrals to DOJ or the U.S. Attorney made by OGC or Regional Counsel.  *OIG* initiated the criminal proceedings in Mr. Rodgers's case.  And § 14.560 requires VA's cooperation in such matters.  And because the plain text of § 14.561 is controlling and ends the Court's inquiry, the Court need not consider Mr. Rodgers's additional arguments on the matter.[3]  Therefore, the Court concludes that a writ is not warranted with respect to Mr. Rodgers's § 14.561 argument and will deny that portion of the petition.  *See Cheney*, 542 U.S. at 380-81.

### ii. Additional arguments related to criminal proceedings

The Court has carefully considered Mr. Rodgers's additional arguments regarding VA's cooperation with the criminal proceedings.  He argues that, apart from his § 14.561 argument regarding the appropriate chronology of criminal and administrative proceedings, to preserve his Fifth Amendment rights he would have to forgo an administrative appeal, depriving this Court of prospective jurisdiction.  On this jurisdictional question, we conclude that Mr. Rodgers fails to carry his burden.

Mr. Rodgers has not explained why, if he requested a stay of administrative proceedings, that stay would impede the Court's prospective jurisdiction or identified an underlying law as to this concern that would affect the provision of VA benefits.  To the extent that he argues that VA has misrepresented VA benefits law in the District Court proceedings, he has not explained how the Court's jurisdiction over Secretarial decisions affecting the provisions of benefits extends to decisions properly before other tribunals.  *See* 38 U.S.C. §§ 511; 7252.  And to the extent that Mr. Rodgers argues that the Court's exclusive jurisdiction over all VA benefits matters extends to grant it authority over OIG's activities, this Court's exclusive jurisdiction is limited to review of final

---

[3] And because the Court is deciding this matter on a plain language reading of § 14.561, it also need not, and does not, render any opinion as to the Secretary's other arguments concerning why § 14.561 does not provide Mr. Rodgers with the relief he seeks.

10

adverse Board decisions (and its authority to issue extraordinary writs in aid of its jurisdiction pursuant to the AWA). Mr. Rodgers has not explained how the Court's jurisdiction extends over OIG, which is charged by statute with the obligation to detect, identify, and refer for prosecution matters related to alleged VA benefits fraud. *See* 5 U.S.C. § 404(a)(4); *see also* 38 U.S.C. § 312(a) (applying the responsibilities outlined in 5 U.S.C. § 404 to VA's OIG).[4]

Similarly, as regards the portion of the second issue that intersects with the criminal proceedings—ordering VA to take corrective action with respect to the impact of the misfiled threat letter on his criminal proceedings—Mr. Rodgers has not explained how further Court action on this issue *as it relates to the outcome of criminal proceedings* affects the provision of benefits or would otherwise be in aid of our prospective jurisdiction. *See In re Matter of Wick*, 40 F.3d 367, 372-73 (Fed. Cir. 1994) (explaining that a party seeking a writ of mandamus "has the burden of showing, *inter alia*, that its right to the issuance of the writ is 'clear and indisputable,' and that the action sought by mandamus is within the court's statutorily defined subject matter jurisdiction" (quoting *Kerr*, 426 U.S. at 403)). Therefore, the Court will dismiss these portions of the petition for lack of jurisdiction.

Ultimately, Mr. Rodgers's arguments that a writ is warranted to bar VA's cooperation and interaction with the criminal proceedings fail because the plain text of § 14.561 is contrary to his arguments, and he has not otherwise persuaded the Court that the remainder of his petition is in aid of our jurisdiction. He remains free to raise concerns specific to the criminal proceedings with the District Court and request that VA stay his administrative appeal pending the resolution of matters in the District Court. Accordingly, the Court concludes that a writ is not warranted based on these arguments and will deny in part and dismiss in part the petition. *See Cheney*, 542 U.S. at 380-81.

Finally, because all segments of Mr. Rodgers's petition will be dismissed or denied, there is no basis on which to consider his Rule 8 motion, and it will also be denied. And because the grand jury testimony is under a District Court protective order and has no bearing on the Court's analysis in these matters, the Court will grant the Secretary's June 27, 2025, order to strike that testimony from the record.

### IV. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that the Secretary's June 27, 2025, motion to strike the grand jury testimony is granted. It is further

ORDERED that the portion of Mr. Rodgers's petition seeking to obtain access to OIG evidence and correct his claims file is DISMISSED as moot. It is further

---

[4] VA's OIG also conducts and supervises audits and investigations involving VA programs and operations, makes efficiency and efficacy recommendations, and advises the Secretary and Congress regarding problems, deficiencies, and recommended corrective action, among other functions. *See About the OIG*, https://www.vaoig.gov/About-the-OIG (last accessed May 4, 2026).

11

ORDERED that the portion of Mr. Rodgers's petition asserting that VA violated § 14.561 is DENIED.  It is further

ORDERED that the remainder of Mr. Rodgers's petition is DISMISSED for lack of jurisdiction.  It is further

ORDERED that Mr. Rodgers's Rule 8 motion is denied.

DATED: July 29, 2026                                         PER CURIAM.